```
 1  GEORGE E. SCHULMAN (State Bar No. 064572)
    gschulman@dgdk.com
 2  KATHY BAZOIAN PHELPS (State Bar No. 155564)
    kphelps@dgdk.com
 3  GILBERT MIKALIAN (State Bar No. 244690)
    gmikalian@dgdk.com
 4  DANNING, GILL, DIAMOND & KOLLITZ, LLP
    2029 Century Park East, Third Floor
 5  Los Angeles, California 90067-2904
    Telephone: (310) 277-0077
 6  Facsimile: (310) 277-5735      NOTE: CHANGES MADE BY THE COURT
    Attorneys for David A. Gill, Receiver
 7
```

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| DAVID A. GILL, solely in his capacity as Permanent Receiver in the matter of *Securities and Exchange Commission vs. Diversified Lending Group, Inc.; Applied Equities, Inc.; Bruce Friedman and Tina M. Placourakis,* U.S.D.C. Case No. CV 09-01533-R-SS, <br><br> Plaintiff, <br><br> vs. <br><br> KAREN O'CALLAGHAN, <br><br> Defendant. | Case No. CV 09-04632-R-SS <br><br> **FINDINGS OF FACTS AND CONCLUSIONS OF LAW; AND ORDER GRANTING SUMMARY ADJUDICATION ON PLAINTIFF'S FIRST CLAIM FOR RELIEF FOR AVOIDANCE AND RECOVERY OF ACTUALLY FRAUDULENT TRANSFER AGAINST KAREN O'CALLAGHAN** <br><br> F.R.Civ.P. 52 <br><br> [No hearing required] |

This Court has received and considered Plaintiff David A. Gill, Receiver's, (1) Notice of Motion and Motion of Receiver for Summary Adjudication against Defendant Karen O'Callaghan on First Claim for Relief in the First Amended Complaint or in the Alternative, for an Order Adjudicating Facts Existing without Substantial Controversy; and Memorandum of Points and Authorities; and Declarations of R. Todd Neilson and David A. Gill ("Motion) [ECF Doc. No. 149],

-1-

357920.01 [XP]    25176A

(2) Declaration of David Callaghan in support of the Motion [ECF Doc. No. 150], (3) Declaration of George E. Schulman in support of the Motion [ECF Doc. No. 151], (4) Declaration of R. Todd Neilson in support of the Motion [ECF Doc. No. 152], (5) Request for Judicial Notice in support of the Motion [ECF Doc. No. 153], (6) Statement of Uncontroverted Facts and Conclusion of Law [ECF Doc. No. 154], and (7) Transcripts of depositions of Karen O'Callaghan dated December 23, 2009, and January 14, 2010 [ECF Doc. 155]. Having considered all documents identified above, and having received no opposition, ruled in chambers on the Motion.

Based on the foregoing, the Court makes the following findings of fact and conclusions of law:[1]

## FINDINGS OF FACT

1. Ms. O'Callaghan was the chief executive officer of Diversified for the year 2004.

2. Ms. O'Callaghan was the chief financial officer of Diversified for the year 2004.

3. Ms. O'Callaghan was the sole director of Diversified for the year 2004.

4. Ms. O'Callaghan was the chief executive officer of Diversified for the year 2005.

5. Ms. O'Callaghan was the chief financial officer of Diversified for the year 2005.

6. Ms. O'Callaghan was the sole director of Diversified for the year 2005.

---

[1] This Order constitutes this Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure. Any finding of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

7. Ms. O'Callaghan was the chief financial officer of Diversified for the year 2006.

8. Ms. O'Callaghan was a director of Diversified for the year 2006.

9. Ms. O'Callaghan was the chief financial officer of Diversified for the year 2007.

10. Ms. O'Callaghan was a director of Diversified for the year 2007.

11. Ms. O'Callaghan was the chief financial officer of Diversified for the year 2008.

12. Ms. O'Callaghan was a director of Diversified for the year 2008.

13. Ms. O'Callaghan was the chief financial officer of Diversified for the year 2009.

14. Ms. O'Callaghan was a director of Diversified for the year 2009.

15. On or about July 15, 2008, Ms. O'Callaghan, wholly funded by Diversified, purchased a single family residence commonly known as 5034 Mecca Avenue, Tarzana, CA 91356 ("Property").

16. The legal description of the Property is: The West 197 Feet of the North 97.33 Feet of Lot 77, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 64, Pages 35 and 36 of Maps, in the office of the County Recorder of Los Angeles County.

17. On or about June 4, 2008, Diversified transferred $40,000.00 on behalf of and for the benefit of Ms. O'Callaghan to Sherwood Escrow for the purchase of the Property.

18. On or about July 10, 2008, Diversified transferred $1,314,985.00 on behalf of and for the benefit of Ms. O'Callaghan to Orange Coast Title Company for the purchase of the Property.

19. On or about July 15, 2008, title to the Property was recorded only in the name of Ms. O'Callaghan.

357920.01 [XP]   25176A

20. Diversified did not receive any consideration in exchange for the payment of $40,000 and $1,314,985 on behalf of and for the benefit of Ms. O'Callaghan (collectively, hereinafter referred to as the "Transfers").

21. At all relevant times, Diversified was the accountholder of a checking account having account number ending "3233" at Wells Fargo Bank.

22. Ms. O'Callaghan admitted that the reason for a separate bank account at Diversified to which she had access to was to hide money she allegedly earned from her ex-husband and from the taxing authorities.

23. At the time the Transfers totaling $1,314,985.00 were made for the benefit of Ms. O'Callaghan, Diversified was being operated as a Ponzi scheme.

24. The Transfers were made from Investor Funds (defined in Paragraph 59, *infra*).

25. On December 23, 2009, and January 14, 2010, the Receiver took the deposition of Ms. O'Callaghan in her individual capacity.

26. In two days of depositions, Ms. O'Callaghan refused to provide a single substantive response and instead invoked her Constitutional right against self-incrimination.

27. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Were you ever employed by Diversified Lending Group?"

28. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Have you ever been an officer of Diversified Lending Group?"

29. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Other than the income reported on this Form 1099, $22,500, did you receive any other income in 2005 from Diversified Lending Group no matter how characterized?"

357920.01 [XP]      25176A

30. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "What services did you provide that resulted in nonemployee compensation to you of $86,250 [from Palomar Airport, LLC, in 2005]?"

31. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Why was Diversified Lending Group paying you 'other income' of $21,100 [in 2006]?"

32. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Did Diversified Lending Group owe you any other money for any work that you had done for Diversified Lending Group for 2006?"

33. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Is there any other money that you earned from Diversified Lending Group in 2007 that is not reflected on this 1099?"

34. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Did Diversified Lending Group provide the funds to pay for the property at 5034 Mecca Avenue, Tarzana, California?"

35. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "How much did you pay for the house at 5034 Mecca Avenue?"

36. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "What was the source of funds used to pay for the house at 5034 Mecca Avenue in Tarzana, California?"

37. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Isn't it true that the funds that you used to purchase the house at 5034 Mecca Avenue, Tarzana, California were funds obtained by investors in Diversified Lending Group?"

357920.01 [XP]         25176A

38. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Isn't it true that the funds you took from Diversified Lending Group to pay for the house at 5034 Mecca Avenue in Tarzana, California were taken with the actual intent to hinder, delay, and defraud Diversified Lending Group's creditors?"

39. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Do you know what representations Diversified Lending Group made to its investors?"

40. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Were you ever involved in -- in persuading people to purchase notes from Diversified Lending Group?"

41. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "So as of 10/16/2006, were you the chief financial officer for Diversified Lending Group?"

42. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "As of October 16, 2006, were you a director of Diversified Lending Group?"

43. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Were you chief financial officer of Diversified Lending Group as of January 28, 2009?"

44. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Were you a director of Diversified Lending Group as of January 28, 2009?"

45. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "What was the source of the $40,000 for which this check was written?"

46. In her deposition on December 23, 2009, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Was the $40,000 money that you obtained from Diversified Lending Group, Inc.?"

47. In her deposition on January 14, 2010, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Is it correct to say that you have been the chief financial officer and a member of the board of directors of Diversified Lending Group since May 2004?"

48. In her deposition on January 14, 2010, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Is it correct to say that on or about July 10, 2008, that you, funded by DLG, purchased a parcel of real estate [improved] as a single-family dwelling commonly known as 5034 Mecca Avenue, Tarzana, California?"

49. In her deposition on January 14, 2010, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Is it correct that the [Mecca Avenue] property was paid for by Diversified Lending Group from Investor Funds in the total amount of $1,354,985."

50. In her deposition on January 14, 2010, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Is it correct to say that for the purpose of acquiring the [Mecca Avenue] property, Diversified Lending Group transferred $40,000 on June 4, 2008 to Sherwood Escrow?"

51. In her deposition on January 14, 2010, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Is it correct to say that for the purpose of acquiring the [Mecca Avenue] property, Diversified Lending Group wired $1,314,985 on July 10, 2008 to Sherwood Escrow?"

52. In her deposition on January 14, 2010, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Is it correct to say that title for the property was taken -- that is, the 5034 Mecca Avenue property -- was taken in your name on or about July 11, 2008?"

53. In her deposition on January 14, 2010, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Is it correct to say that Diversified Lending Group did not receive any consideration in exchange for these two transaction of money, the $40,000 and the $1,314,985?"

54. In her deposition on January 14, 2010, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Is it correct to say that the transfer of the funds, these two transfers of $40,000 and [$]1,314,895, was made by Diversified Lending Group with the actual intent to hinder, delay, or defraud one or more of its creditors?"

55. In her deposition on January 14, 2010, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Is it correct to say that when Diversified Lending Group made those transfers of funds, it did not receive fair consideration or reasonably equivalent value in exchange for these transfers?"

56. In her deposition on January 14, 2010, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Is it correct to say that when these two transfer of funds were made, the $40,000 and the $1,314,985, that DLG was at that time was already insolvent?"

57. In her deposition on January 14, 2010, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Is it correct to say that when Diversified Lending Group transferred the $40,000 and the $1,314,985, it was engaged in or was about to engage in business or a transaction for which any property remaining with Diversified Lending Group was unreasonably small capital?"

58. In her deposition on January 14, 2010, Ms. O'Callaghan refused on Fifth Amendment grounds to answer the question "Is it correct to say that when Diversified Lending Group transferred the $40,000 and the $1,314,985 for the purchase of the 5034 Mecca Avenue property, that Diversified Lending Group had

-8-

357920.01 [XP]     25176A

already incurred or believed or reasonably should have believed that it would have incurred debts that would be beyond its ability to pay such debts as they matured?"

59. From 2004 through early 2009, Diversified collected more than $228 million from investors ("Investor Funds").

60. Investor Funds were used by Diversified to fund business operations.

61. Investor Funds were used by Diversified to make payments to or for the benefit of insiders.

62. Investor Funds were used by Diversified to invest in speculative ventures which returned little or no income or value to Diversified.

63. Diversified represented to its investors that they would receive either 9% or 12% on their invested principal from Diversified's business operations, which were represented to be investments in income-producing "scratch and dent" real estate property.

64. Contrary to its representations, Diversified did not acquire, rehabilitate, or operate income producing "scratch and dent" real property.

65. Contrary to its representations to investors, Diversified did not typically invest in income producing real estate or mortgage loans.

66. Contrary to its representations to investors, Diversified invested in speculative investments related to business ventures ranging from children's products to medical imaging to development projects.

67. The rates of returns guaranteed by Diversified were a fabrication to entice investors to deposit funds with Diversified.

68. Diversified misrepresented the nature of its investment program to its investors, including but not limited to the following:

    a. Diversified misrepresented that it possessed total assets that increased each year from $432 million in 2004 to $655 million in 2007.

    b. Diversified misrepresented that its net income increased each year from $79 million in 2004 to $141 million in 2007.

   c. Diversified misrepresented that its annual investment return increased each year from 20.56% in 2004 to 24.09% in 2007.

69. Diversified only earned a total of approximately $3.3 million of income from the use of the investors' funds.

70. More than $2 million of Diversified's income was simply interest earned by investing in money market accounts and bonds.

71. Approximately $1.1 million of Diversified's income was primarily comprised of interest earned on loaned funds and loan origination fees.

72. The amount of approximately $37 million was paid out to investors as supposed profits and return of principal on their investments.

73. From 2004 through 2009, the cumulative difference between the minimal earnings generated by Diversified and the payment of interest and return of capital to investors was approximately $33.7 million.

74. The funds paid out as fictitious profits were new dollars deposited by subsequent investors and were not funds generated as earnings from business operations of Diversified.

75. Diversified used over $54 million of the Investor Funds to make payments to or for the benefit of Bruce Friedman, his family, friends, and other insiders.

76. During 2008, Diversified was unable to meet its current obligations without new money from investors.

77. At all relevant time, Diversified Lending Group, Inc. was operating as a Ponzi scheme where recent investor funds were used to pay investors who had previously invested with Diversified.

-10-

## CONCLUSIONS OF LAW

A. This Court draws an adverse inference against Defendant O'Callaghan as to those items described in paragraphs 27 through 58, infra, because Defendant O'Callaghan refused to answer those particular questions by invoking her privilege against self-incrimination, and independent evidence exists of the facts to which Defendant O'Callaghan refused to answer. *Baxter v. Palmigiano*, 425 U.S. 308 (1976).

B. The transfer of $1,314,985.00 from Diversified to Defendant O'Callaghan was made with the actual intent to hinder, delay or defraud one of more of Diversified's investors/creditors.

C. Plaintiff has a right to recover $1,314,985.00 of its funds.

D. Plaintiff was harmed by the transfer of funds.

E. Defendant O'Callaghan's conduct was a substantial factor in causing Plaintiff's harm.

F. Plaintiff is entitled to judgment for $1,354,985.00 plus applicable interest and costs.

G. As Defendant O'Callaghan is a debtor in a bankruptcy proceeding and the Property is property of the bankruptcy estate, and the order for relief from stay only lets the Receiver liquidate his claims, the Court is not awarding title to the Property.

**IT IS SO ORDERED THAT**:

1. The Motion is GRANTED.

2. The Plaintiff is granted summary adjudication on the first claim for relief for avoidance and recovery of actually fraudulent transfer in the First Amended Complaint against Karen O'Callaghan.

357920.01 [XP]     25176A

3. The Plaintiff shall have and recover a judgment against Karen O'Callaghan in the amount $1,354,985.00, plus pre-judgment interest thereon at the rate set forth in 28 U.S.C. § 1961 from the date of the transfer of funds (July 15, 2008) to the date of entry of judgment.

4. The Plaintiff shall have and recover from Karen O'Callaghan post-judgment interest from the date of entry hereof until paid in full at the interest rate provided by law.

5. The Plaintiff is authorized to release the writ of attachment against the real property located at 5034 Mecca Avenue in Tarzana, California, recorded on July 22, 2009, instrument number 20091112478, recorded with the Los Angeles County Recorder, with the judgment to be entered to relate back to the date of recording of the writ of attachment.

6. The form and manner of notice of the Motion provided by the Plaintiff is appropriate.

7. Plaintiff is to submit a dismissal of the remaining claims for relief, and a judgment.

Dated: November 30, 2010      _____
MANUEL L. REAL
United States District Judge

-12-

357920.01 [XP]      25176A

## **PROOF OF SERVICE**

I, Cindy A. Sandino, declare:

I am employed by the law firm of DANNING, GILL, DIAMOND & KOLLITZ, LLP, in the County of Los Angeles, State of California. I am employed in the office of a member of the bar of this court at whose direction the service was made. I am over the age of 18 years and am not a party to the within action. My business address is 2029 Century Park East, Third Floor, Los Angeles, California 90067-2904.

On November 30, 2010, I served the following document(s):
**[PROPOSED] FINDINGS OF FACTS AND CONCLUSIONS OF LAW; AND ORDER GRANTING SUMMARY ADJUDICATION ON PLAINTIFF'S FIRST CLAIM FOR RELIEF FOR AVOIDANCE AND RECOVERY OF ACTUALLY FRAUDULENT TRANSFER AGAINST KAREN O'CALLAGHAN**
on the interested parties addressed as follows:

### SEE ATTACHED SERVICE LIST

(By Mail) I placed the document for collection and deposit in the mail. I am familiar with this firm's practice for the collection and processing of correspondence for mailing. Under that practice, the document would be placed in a sealed envelope and deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at 2029 Century Park East, Third Floor, Los Angeles, California 90067-2904, in the ordinary course of business. The documents served were placed in sealed envelopes and placed for collection and mailing following ordinary business practices.

(By Email)

I declare under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct.

Executed on November 30, 2010, at Los Angeles, California.

| Cindy A. Sandino | /s/ Cindy A. Sandino |
|---|---|
| (Type or print name) | (Signature) |

-13-

357920.01 [XP]    25176A

## SERVICE LIST

**Defendant Karen O'Callaghan (By U.S. Mail)**
Karen O'Callaghan
5034 Mecca Avenue
Tarzana, CA 91356

**Courtesy Copy (By Email)**
John M McCoy , III, Esq.
US Securities & Exchange Commission
Office of Enforcement
5670 Wilshire Boulevard 11th Floor
Los Angeles , CA 90036
Email: mccoyj@sec.gov

-14-

357920.01 [XP]    25176A